Alexander Hagel, OSB No. 226147
Cedar Law PLLC
600 1st Ave., Ste. 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277
Email: alex@cedarlawpllc.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BENJAMIN, AND LAUREN BURKE,
individually, and in their capacities as parents
and guardians of minor child, S.B.,
individually.

                     Plaintiffs,

    v.

PORTLAND PUBLIC SCHOOLS,

                  Defendant.

Case No.

**COMPLAINT FOR DAMAGES**

JURY DEMAND

Plaintiffs, by and through their attorney, Alexander Hagel, of CEDAR LAW PLLC, hereby states and alleges as follows:

### I.    PARTIES

1.1    Plaintiff S.B. is currently eight years old and lives with his parents in Portland, Oregon. Benjamin and Lauren Burke are S.B.'s legal and biological parents. They sue in their capacity as parents and guardians of S.B.

1.2    Defendant Portland Public Schools ("District"), operating as Hayhurst Elementary

COMPLAINT FOR DAMAGES AND JURY DEMAND
– 1

**Cedar Law PLLC**
600 1st Ave, Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

School, is a special governmental body, as defined by ORS 17.117(1)(b), organized under the laws of the State of Oregon and located in Multnomah County, Oregon.

## II.    JURISDICTION AND VENUE

2.1    This Court has personal jurisdiction over the parties and subject matter jurisdiction for the claims in this complaint pursuant to jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Oregon state claims under 28 U.S.C. § 1367(a).

2.2    Jurisdiction is also proper in this Court because an appropriate Tort Claim Notice was served on Defendant on or about November 19, 2024.

2.3    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because both Parties are located here within the District of Oregon, and the events giving rise to this Complaint occurred within the District of Oregon.

2.4    Plaintiff served tort claim notice to the Defendant on or about November 19, 2024.

## III.    FACTUAL ALLEGATIONS

3.1    S.B. started second grade at Hayhurst in Sarah Chick's class on August 27, 2024.

3.2    Another student A.A. [1]  was also in this class.

3.3     S.B. and A.A. had shared a class in kindergarten together. There had been issues as early as in kindergarten where A.A. had kept putting his hands on S.B.

3.4    At the start of the 2024/2025 school year the severity and frequency of the physical instances by A.A. to S.B. increased dramatically and he also started sexually assaulting S.B..

---

[1] A.A. is the minor student who sexually and physically assaulted S.B. Given he is a minor, Plaintiffs are using initials to protect his identity.

COMPLAINT FOR DAMAGES AND JURY DEMAND – 2

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

**A.A. Physically Assaults S.B. on Numerous Occasions And the School Fails to Intervene**

**or Take Any Steps to Minimize the Harm**

3.5     On August 28, 2024, A.A. choked S.B. during lunch time. S.B. told an adult in the cafeteria, but no staff relayed this information to S.B.'s parents.

3.6     Then, on or about August 28 or 29th, 2024, while S.B. was walking back to his seat in Mrs. Chick's classroom, A.A. tripped or pushed S.B. down to the floor.

3.7      A.A. then started aggressively pushing down on S.B.'s lower belly with force as S.B. is pinned on the ground, making it difficult for S.B. to breathe.

3.8     When S.B. reported A.A. to Mrs. Chick, she told A.A. to keep his hands to himself, but took no other action.

3.9     Neither Mrs. Chick nor the school reported this incident to the parents. S.B was the one who shared what had happened to him with his parents.

3.10    On August 29, 2024, around morning recess, S.B. was rotating on the swing with the rope along the outside and A.A. was spinning S.B.

3.11    A.A. began to spin S.B. too fast, and S.B. repeatedly yelled at A.A. to stop, but A.A. continued to swing S.B.

3.12    S.B. was thrown from the swing and got a visible rope burn on his neck from the fall.

3.13    S.B. went to the nurse's office after this incident.  While the nurse was on the phone with Mrs. Burke, S.B. requested to talk to his mother directly.

3.14    S.B. told her he "needs" to come home for the rest of the day, a request that was out of character for him.

COMPLAINT FOR DAMAGES AND JURY DEMAND – 3

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **A.A.'s Actions Towards S.B. At School Increase to Sexual Assault**

3.15    Sometime during the school day between August 28, 2024 and August 30, 2024, A.A. repeatedly touched S.B.'s genitals.

3.16    S.B. disclosed that A.A. touched his genitals in at least two different physical locations within the school, including in music class and in the normal classroom.

3.17    S.B. had repeatedly told A.A. to stop, and increased his volume each time A.A. touched him.

3.18    During one of the incidents, when S.B. told A.A. to stop, A.A. refused and replied, "it's okay, that's the tickle spot."

3.19    Given no one had attempted to stop the assaults, S.B. took it upon himself and bravely reported this to Mrs. Chick.

3.20    Mrs. Chick then informed the parents by phone on August 30, 2024.

3.21    That same night, the father emailed Principal Re-Bloom to set up a time to meet to address the parent concerns regarding A.A. harassment and sexual assault of their son. In the email to Principal Re-Bloom, the father noted that on top of the genital touching, there had been three other incidents with this same student physical touching S.B. in inappropriate ways. He expressed deep concerns about sending S.B. to school.

3.22    In response, Principal Re-Bloom expressed what the plan would be to support S.B.:

COMPLAINT FOR DAMAGES AND JURY DEMAND – 4

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

I completely understand your concern around the third point. I won't be able to speak to the other student, but I can speak about what we will do to support ███.

- At assemblies, we will separate the two classes so they are on opposite sides of the cafetorium, and ███'s class will leave before the other 2nd grade.
- ███ will be seated on the opposite side of the cafetorium for lunch and will be completely separate during recess. We have also briefed all staff members who would be supervising the children that they are not to have any contact with each other. Our AP, Mr. Corona, will be in the lunchroom during ███'s lunch as well.

Additionally, I wanted to share a document we ask students and families to sign when it is found that the child has engaged in harassment, intimidation, and/or bullying. We take this document and the consequences of a violation of it, very seriously.

I hope this helps shed light on your third point. I'm sorry I can't be more specific.

  3.23  Principal Re-Bloom did not address what consequences or actions that would impact A.A. to ensure that he did not have access to S.B.

  3.24  Instead, the support plan prioritized separating the two students and ensuring there was staff knowledgeable of the past incidents to supervise S.B. and A.A. during breaks.

  3.25  Principal Re-Bloom assured Mr. Burke that she was dedicated in making sure both the S.B. and his parents felt safe for him to be at school.

  3.26  S.B is moved into Deborah Crews' class.

  3.27  During recess on September 3, 2024, District staff failed to ensure S.B. and A.A. were at separate recesses, and S.B. and A.A. end up outside at recess at the same.

  3.28  As soon as A.A. saw S.B., he immediately approached S.B. and tried to engage him by approaching him in an intimidating manner and talking to S.B..

  3.29  S.B. ran off to tell an adult about the contact violation.

  3.30  Staff did not report S.B.'s fear or the interaction to the Parents.

  3.31  Instead, S.B. came home and reported that A.A. had approached him again.

  3.32  Around September 4, 2024, S.B. exited Mrs. Crews' classroom alone to fill his water bottle in the hallway.

COMPLAINT FOR DAMAGES AND JURY DEMAND – 5

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

3.33    Unbeknownst to S.B., A.A. was also alone in the hallway.

3.34    A.A. immediately approached S.B. and, in violation of the no contact protocol, attempted to engage with him, again in an intimidating manner.

3.35    S.B. glared at A.A. but said nothing.

3.36    A.A. then threw up his hands at S.B. as though he had no idea why S.B. was acting that way.

3.37    No adults were present in the hallway during this interaction. The lack of supervision failed to prevent A.A. from approaching S.B yet again.

3.38    S.B. was overwhelmed with fear at this point – as it seemed that no matter where he went in the school A.A. was there to harass him.

3.39    After this incident, S.B. explicitly told his parents that he was afraid to go into the hallway by himself.

3.40    On September 4, 2024, the mother went to the school requesting to speak to Principal DC-Bloom.

3.41    Later that day Hayhurst Assistant Principal Gabriel Corona called the father. During that call, the father reported S.B.'s fears about going in the hallway and regarding the interaction at recess. He noted that it appeared A.A. had an ongoing desire to approach and interact with S.B. and there was a clear lack of safety measures to support S.B. The father requested an updated safety plan because the one the District had implemented was not appropriately implemented to protect S.B. However, despite the District knowing this, a new plan would not be communicated nor implemented until over two weeks later on September 26, 2024.

3.42    On September 10, 2024, Mr. Burke messaged Principal Re-Bloom on Remind, a

COMPLAINT FOR DAMAGES AND JURY DEMAND – 6

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

District communication application platform that connects students and families with District employees. In that message, Mr. Burke requested to talk to Principal Re-Bloom about S.B.'s disclosure of multiple interactions with A.A. the day prior and that S.B. had expressed to his father that he is nervous and does not want to come to school because he was worried it would happen again.

3.43    At that time, S.B. had been staying up late with dread, and was losing sleep due to the constant harmful interactions with A.A.

3.44    Principal Re-Bloom never responded to the Remind message.

**The District Fails to Act and S.B. Continues to Suffer at the Hands of A.A.**

3.45    On or around September 12 or September 13, during a transition period between S.B.'s recess and A.A.'s recess, S.B. was lined up at the end of Mrs. Crews' line waiting to enter the building.

3.46    A.A. approached S.B. from behind and fondled S.B.'s private area while saying "tickle tickle."

3.47    S.B. pushed A.A. away.

3.48    Not a single staff member intervened to stop the interaction.

3.49    Throughout the subsequent weeks, S.B. continued to feel unsafe at Hayhurst and those feelings grew exponentially as the District permitted A.A. to have ongoing contact with S.B., including sexual contact after the initial reports.

3.50    On the morning of September 16, 2024, S.B. refused to leave the house to go to school and at one point was hiding in the closet. After two hours of talking with his father, S.B. disclosed he was scared to go to school because just days prior A.A. had *again* touched S.B.'s

COMPLAINT FOR DAMAGES AND JURY DEMAND
– 7

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

privates during recess.

3.51    He was expressing fear and anxiety about the ongoing contact (particularly the sexual contact) he was subject to at school by A.A.

3.52    After talking with his parents for some time, S.B. decided to go to school. As Mr. Burke was walking S.B. to school that morning, S.B. further disclosed that A.A. also touched S.B. while waiting for Ms. Hilary. As S.B. was making these disclosures, he had a panic attack just inside the front doors of the school. He was over by the long bench against the right wall. Principal Re-Bloom happened to come by and they witnessed part of S.B.'s panic attack that morning.

3.53    S.B. confided in his dad that the reason he didn't want to go to school was because he was afraid that A.A. would touch him again.

3.54    S.B. continued to not feel safe at school, while his parents were concerned about S.B.'s lack of protection.

3.55    On the morning of September 17, 2024, Mrs. Burke messaged Mrs. Crews to notify her that because S.B. and A.A. "continued to have contact despite the No Contact Order" that S.B. did not "feel safe at [that] point to be in the same school as [A.A.]" and that the parents would "be keeping [S.B.] home until further notice."

3.56    Mr. Burke drafted the September 17, 2024, safety letter that he emailed to Principal Re-Bloom, detailing each incident known to the father at the time that S.B. had endured at the hands of A.A. and the ongoing failure to keep A.A. away from S.B.

**The District Fails to Investigate or Protect S.B. From Known Harm**

3.57    Following the letter, Mr. Burke tried to contact Principal Re-Bloom multiple days in a row to address the concerns.

COMPLAINT FOR DAMAGES AND JURY DEMAND – 8

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

3.58    On the evening of September 18, 2024, Mr. Burke tried to call the school, but since he was after hours and he did not have the Principal's main line, he could not reach them.

3.59    Principal Re-Bloom responded that evening that they wanted to collect information and call the father after 3:30p the following day. The father agreed to that time.

3.60    Principal Re-Bloom never called on at all on September 19, 2024, stating there were unannounced activities in the school building that day. They reset the call for 7:15 a.m. the following morning.

3.61    At 10:23 on September 20, 2024, the father emailed Principal Re-Bloom asking if the meeting was "still on?" He reminded the Principal that he did not "have a direct number for you so I'm depending on you calling me."

3.62    Despite setting multiple meetings with the Principal, Principal Re-Bloom failed to call Mr. Burke on multiple set appointments. Mr. Burke continued to email the Principal in an effort to discuss his son's safety, but they did not appear to have the same level of concern about addressing these urgent matters.

3.63    Amidst his tremendous fear and anxieties about the incidents and threat of A.A.'s presence, there were days that S.B. had courage to go to school. S.B. had loved Hayhurst, his class, his teachers and his friends and just wanted to feel safe from A.A..

3.64    On September 24, 2024, Mr. Burke reached out to Principal Re-Bloom via Remind. Absent response, the parents emailed them on September 25th asking for an update from the District Title IX representative. Principal Re-Bloom stated they would connect after 4:00 pm to share information Principal Re-Bloom did not call and instead sent an email at 7:25 p.m. apologizing for not calling. They rescheduled a meeting with the parents for after 4:00 p.m. the

COMPLAINT FOR DAMAGES AND JURY DEMAND – 9

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

following day.

3.65    By 7:06 p.m. on September 26, 2024, the parents emailed Principal Re-Bloom for

an update – as they had yet to receive a call from them.

3.66    Principal Re-Bloom shared, by email, that they were "taking this very seriously"

and created a new "stay-away plan" that they attached.

> Hey all!
>
> I am going to share with you what I can right now.  Our legal department has prevented me from sharing any other document or disciplinary decision.  What I will say is that we are taking this very seriously.  We have a new stay-away plan in place after a meeting with the family on Tuesday (which is included).  S.B. will decide if he would like to participate in lunch/recess with his friends for the week or if he would rather eat in my office and play a game / watch a video, with or without friends.  As you will see in the plan, we have steps in place to limit  any incidental contact at all between them.  We are also monitoring and tracking any violations of the stay-away order.  Should this happen, we will move ahead with additional administrative decisions and act swiftly.

3.67    It appeared that the District was protecting itself and essentially the student

perpetrator rather than ensuring safety mechanisms were in place for S.B.

3.68    The plan would force S.B. to decide **each week** whether he would rather participate

at lunch/recess with his friends or eat in Principal Re-Bloom's office and play a game/watch a

video. This farce attempt to limit contact between S.B. and A.A. seemingly punished for being a

victim of sexual assault.

3.69    Principal Re-Bloom also stated the District would act "swiftly" if there were

violations of the stay-away order, despite failing to act swiftly (or at all) during the previous

violations.

3.70    In response, the father rightfully pointed out that the child had already violated the

previous "stay-away order" on multiple occasions, resulting in additional harassment and sexual

touching to S.B. and yet S.B. was the one who was having addition disruption on top of the trauma

COMPLAINT FOR DAMAGES AND JURY DEMAND
– 10

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

1    he had already endured.

2       3.71    At the time of that email there were already eight known incidents, and the parents

3    had no trust that the District would do anything to prevent another incident given their failure to

4    effectively implement the previous stay-away plan.

5       3.72    The parents were disturbed by the lack of accountability and efficiency in

6    protecting S.B. They were understandably frustrated and had very little confidence that the school

7    would take the situation seriously.

8       3.73    In a separate email, the father disclosed there were **two** additional incidents that

9    S.B. had disclosed that had occurred during the week of September 26th, including one out of the

10   recess line. Principal Re-Bloom confirmed she had heard there was an incident in the student line,

11   but because S.B. himself did not tell Principal Re-Bloom (although clearly a report had been made

12   by their own admission) Principal Re-Bloom was "not able to act". To date, it is not clear to the

13   parents why S.B. had to report directly to Principal Re-Bloom, when a report was made that made

14   its way to Principal Re-Bloom, yet they failed to follow up.

15      3.74    On September 27, 2024, Mr. Burke emailed that S.B. was going to be absent for

16   "mental health" reasons because "he hasn't felt safe because of another student's behavior".

17      3.75    On September 30, 2024, S.B. resisted going to school, which was a daily occurrence

18   at that point. Mr. Burke sent an email to inform Principal Re-Bloom and requested to speak with

19   them.

20      3.76    Even if the parents could get S.B. into the school it is a challenge to get him to walk

21   in the hallways for fear of seeing A.A.

22      3.77    On October 4, 2024, the parents notified us that S.B. would not be in school that

COMPLAINT FOR DAMAGES AND JURY DEMAND
– 11

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

day as well as October 7th and 8th. In the same email, they requested a hardship transfer to the Odyssey Program.

3.78    The parents submitted a completed hardship transfer petition on October 14, 2024.

3.79    That same day, the parents sent an updated letter providing additional information and additional incidents of harassment and sexual touching that S.B. endured at the hands of A.A.

3.80    The parents made the difficult decision to unenroll him from Hayhurst and place him at a private school. The parents' priority was S.B.'s safety and mental wellbeing and they did not trust the District based on its actions (and inactions).

3.81    Mrs. Crews permitted S.B. to come and have a chance to say goodbye to the class during the class Halloween party. Despite his fear, S.B. did want the opportunity to say goodbye to his friends.  In order to make S.B. feel safe, the father walked in front of him through the halls to ensure that A.A. was not physically present or able to see or contact S.B. When they arrived in Mrs. Crews class, she observed the father doing this. The father updated her on *why* they had to remove S.B. from school and where we were sending him. She told the father that if she were him, she would have done the exact same thing.

3.82    S.B. has continued to express harm because of the ongoing harassment and sexual assault by A.A. He also has displayed anxiety over going to sports and places he loves because of the overwhelming anxiety that A.A. would be present.

3.83    On March 1, 2025, he expressed anxiety about going to baseball – an activity that brings him joy – because he was worried A.A. would be there and that he would "touch me again" and gestured to his genitals. When the parents tried to reassure him that A.A. was not on his team.

3.84    When his dad asked him if he had been thinking about all that happened with A.A.,

COMPLAINT FOR DAMAGES AND JURY DEMAND – 12

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

S.B. responded, "I can't forget about it, it was a really hard time, I will never forget about it" and compared it to his grandfather dying to express how it made him feel.

3.85    The parents' reassurance could not assuage S.B.'s fears about seeing A.A. and as a result, the parents cancelled S.B.'s participation in baseball that season and he missed out on the opportunity to connect with his peers, play a sport he loved.

3.86    He then told his dad that if he ever saw A.A. again that he would wear a protective cup to protect himself.

3.87    On March 4, 2025, unbeknownst to the parents and seemingly unprompted, S.B. got up in front of his class and disclosed the inappropriate touching by A.A. that occurred at Hayhurst. He wanted his class to know that he had to continue to be in school with A.A. and so he left because of how bad it was for him at Hayhurst – he shared that he was not kicked out of the school and was not a bad kid.

3.88    The anxiety of having to start over, make new friends and show up at a new school, on top of the trauma, was weighing on him – something he would not have had to do with the proper support.

3.89    When the parents talked to S.B. about his disclosure to his class he shared that he did it because he wanted his class to know that he did not get kicked out of school and that he was not a bad kid. He told his parents that once he shared this, a lot of his classmates opened up to him and showed an interest in being his friend. At the same time, kids were asking questions about his disclosure, but he explained to his parents that he did not want to share all the pieces of his story (i.e. what privates were touched).

3.90    Then, unprompted, in the middle of this conversation with his parents, S.B. walked

COMPLAINT FOR DAMAGES AND JURY DEMAND – 13

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

away and drew a picture of A.A. going to jail for what he did to S.B. He said he was signing it to make it official.



3.91    He expressed concern that he would have to encounter A.A. in the future, such as in middle school or high school.

3.92    The parents reassured him that it is their job to keep him safe and keep A.A. away from him and that he is away from A.A. at his new school.

3.93    S.B. has been seeing a therapist and his treatment is ongoing. They are working on him understanding that none of what occurred was his fault – working on a consistent message of safety – as they work through the trauma of the events that occurred at Hayhurst.

COMPLAINT FOR DAMAGES AND JURY DEMAND – 14

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

3.94    On top of S.B.'s harm, as detailed above, Mrs. Burke missed multiple work shifts, resulting in lost wages, during a time when she is the sole earner in the household.

3.95    Mr. Burke had to delay his job search because of S.B.'s unpredictable attendance, safety concerns, and several appointments with the school.

3.96    While S.B.'s safety has been a paramount priority for the parents, it appears even after multiple reports, it has <u>not</u> a priority, on even a concern, for the school staff.

## IV.    CAUSES OF ACTION

### A. Violation of Title IX of the Education Amendments of 1972

### 20 U.S.C. 1681 *et. Seq.*

4.1    Plaintiff re-alleges the paragraphs set forth above and below.

4.2    Title IX declares that "No person in the US shall, on the basis of sex, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. 1681(a).

4.3    S.B. was a student within the District and endured discrimination in the form of sexual harassment from A.A. multiple times in the first couple of months of S.B.'s second grade.

4.4    The harassment was pervasive, severe, and constant, greatly affecting S.B.'s physical and emotional wellbeing as well as his sense of safety at school.

4.5    The consistent assaults resulted in Hayhurst becoming an abusive terrifying environment for S.B.  Defendant had actual knowledge of the sexual harassment since August 30, 2024.

4.6    Instead of investigating and appropriately addressing the sexual incidents, Defendant assured S.B.'s parents that they would supervise and keep separate the boys during

COMPLAINT FOR DAMAGES AND JURY DEMAND – 15

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

break.

4.7     Despite these verbal assurances, Defendant did not do so.

4.8     This no-contact plan proved ineffective and unenforced when staff either failed to supervise S.B. and A.A., thereby failing to be able to act on A.A.'s continual harassment of S.B., failed entirely to intercede during the incidents, and/or failed to report the incidents to S.B.'s parents.

4.9     Defendant had the opportunity and actual authority to take appropriate preventive measures to protect. S.B. and stop the harassment.

4.10    For example, per the District Policy 4.30.063-AD, the District recognized their duty to address the harassment sufficiently and appropriately.

4.11    Instead, they failed to appropriately supervise and intervene which left S.B. vulnerable to A.A.'s  physical and sexual pervasive harassment and assaults.

4.12    Defendant had failed to take reasonable, prompt, and effective remedial or preventative measures to safeguard S.B. and these failures caused S.B. harm.

4.13    As the prevailing party, S.B. is entitled to their reasonable attorney's fees and costs.

**B. Negligence**

4.14    Plaintiff re-alleges the paragraphs set forth above and below.

4.15    Defendant had a duty to exercise reasonable care to supervise students who were in their care and control to prevent them from causing injury or being injured at school.

4.16    This duty applies whether the risk is that the student will injure another student, will be injured by another student, or will cause injury to himself or herself.

COMPLAINT FOR DAMAGES AND JURY DEMAND – 16

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

4.17    Defendant had a duty to exercise reasonable care to protect students in its custody from foreseeable harm, including but not limited to inappropriate sexual contact between students.

4.18    Defendant had a duty to protect students from situations where the Defendant knew and/or should have known presented harm to the safety and well-being of students, including not limited to inappropriate sexual contact and/or physical contact between students.

4.19    Finally, Defendant had a duty to exercise reasonable care in investigating and responding to a reported incident.

4.20    Defendant breached the above duties by failing and neglecting to supervise S.B. and A.A. on multiple occasions while in Defendant's care and custody.

4.21    Defendant breached the above duties by failing to take reasonable steps to create and implement an appropriate safety plan and protocols for S.B, and failing to ensure staff were appropriately trained in the safety plan and protocols.

4.22    Defendant breached the above duties by failing to take reasonable steps to ensure S.B. was separated from A.A.

4.23    Defendant breached the above duties by failing to take reasonable steps to ensure that A.A. did not have unsupervised access to S.B.

4.24    Defendant breached its duty by failing to implement an appropriate safety plan to ensure S.B. and A.A. were separated, despite Defendant having knowledge about prior incidents spanning back to kindergarten.

4.25    Defendant breached its duty by failing to follow its own policies prohibiting harassment. Both the administrative directive 7.40.010-AD on anti-harassment in the District Community, and 4.30.063-AD regarding Title IX Sexual Harassment between students implicated

COMPLAINT FOR DAMAGES AND JURY DEMAND – 17

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

the Defendant's duty to protect S.B., act with urgency, report abuse, assess the situation and provide appropriate safety measures to protect the victims.

4.26    Defendant further breached the above duties by failing to adequately train, supervise, and instruct school personnel on following school safety plans and protocols.

4.27    During many incidents, S.B. found himself alone or without supervision by staff who had a duty to observe and immediately interfere if A.A. engaged with him.

4.28    During many incidents, A.A. was alone or without supervision by staff who had a duty to observe and immediately interfere if he attempted to engage with S.B.

4.29    Even during incidents that were witnessed by staff, many times they would fail to address the incident and/or report it back to the parents.

4.30    As a direct and proximate result of Defendant's negligent acts and omissions as described above, S.B. was physically, emotionally, and mentally harmed as a result of the multiple instances of inappropriate sexual contact, threats, and physical contact that S.B. endured by A.A. while in the Defendant's care between August 2024 and October 2024.

4.31    Likewise, as a direct and proximate result of Defendant negligent acts and omissions as described above, S.B. did not feel safe at Hayhurst Elementary School and the stress and fear of attending Hayhurst manifested into physical symptoms as articulated above.

**C. Abuse of Vulnerable Person**

4.32    Plaintiff re-alleges the paragraphs set forth above and below.

4.33    S.B. is a vulnerable person as defined under ORS 124.100(1)(e)(C). He was, at the time of the events, an incapacitated person due to his youth in that his ability to receive and evaluate information effectively or to communicate decisions was impaired to such an extent that

COMPLAINT FOR DAMAGES AND JURY DEMAND – 18

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

he lacked the capacity to meet the essential requirements for his physical health or safety.

4.34   He was, at the time of the events, an incapacitated person due to a combination of his youth and disability in that his ability to receive and evaluate information effectively or to communicate decisions was impaired to such an extent that he lacked the capacity to meet the essential requirements for his physical health or safety.

4.35   S.B. suffered physical abuse within the meaning of ORS 124.105(1)(a) on numerous occasions at school including when A.A. when A.A. choked S.B., pushed or tripped S.B. and pressed on his belly, and when A.A. spun S.B. around on a swing which resulted in A.A. falling from the swing and having rope burn on his neck.

4.36   Additionally, the sexual contact that occurred between S.B. and A.A. constituted "physical abuse" within the meaning of ORS 124.105(1)(h).

4.37   S.B. suffered injury because of this physical abuse.

4.38   Aware of S.B's incapacity and aware of the prior incidents between S.B. and A.A., Defendant failed to follow the safety plan and protocols for S.B.

4.39   Defendant's voluntary actions, including its voluntary failure to act, created, despite knowing of past incidents, created a situation in which it was foreseeable that inappropriate sexual contact between S.B. and A.A. would occur. *Wyers v. Am. Med. Response Nw., Inc.*, 360 Or 211, 221–23 (2016); *Hunsinger v. Graham*, 288 Or App 169, 183 (2017).

4.40   The acts and omissions of the school staff, including Principal Re-Bloom, were within the scope of their employment or duties. *E.J.T. v. Jefferson Cnty.*, 370 Or 215, 224 (2002).

4.41   Defendant is therefore liable for physical abuse under ORS 124.100(5).

4.42   Should S.B. prevail, he is entitled to three times all economic and non-economic

COMPLAINT FOR DAMAGES AND JURY DEMAND – 19

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

damages and reasonable attorney fees and costs, pursuant to ORS 124.100(2).

## V. PRAYER FOR RELIEF

5.1    Plaintiffs request relief as follows:

5.2    For judgment against Defendants for compensatory damages for the physical harm, and emotional and mental damages, that manifested into physical symptoms caused by Defendant's carelessness and negligence;

5.3    For judgment against Defendant for all general and special damages in amounts to be proved at the time of trial;

5.4    For an award of costs and attorney's fees under 42 U.S.C. § 12205, 29 U.S.C. § 794 and ORS 124.100(2). and any other applicable provisions of federal or state law; and

5.5    For such other and further relief as the Court may deem just and equitable.

## VI. RESERVATION OF RIGHTS

6.1    Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

## VII. JURY DEMAND

7.1    Under the Federal Rules of Civil Procedure, Plaintiffs demand that this action be tried before a jury.

DATED this 13th day of November, 2025

CEDAR LAW PLLC

s/*Alex Hagel*
Alex Hagel, OSB No 226147

COMPLAINT FOR DAMAGES AND JURY DEMAND – 20

**Cedar Law PLLC**
600 1st Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

600 1ˢᵗ Ave., Ste. 330 PMB 96563
Seattle, Washington 98104-2246
Telephone: (206) 607-8277
Fax: (206) 237-9101
E-mail: alex@cedarlawpllc.com
*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES AND JURY DEMAND
– 21

**Cedar Law PLLC**
600 1ˢᵗ Ave., Ste 330
PMB 96563
Seattle, WA 98104-2246
(206) 607-8277
Fax (206) 237-9109